24-2084. Let me ask the Coordinating Deputy a question. Thank you. I recognize Mr. Wall. It was not consistent with the name here. I'm sorry. That's okay. All right. Good morning. Good morning, Your Honors. Mark Stansel for Appellant, Wilmington Savings Fund Society as indentured trustee. The bondholders here lent money to Canadian Pacific to help it acquire control of Kansas City Southern Railroad. But they did so subject to a specific condition. That condition imposed a deadline by which Canadian Pacific had to obtain the actual legal ability to take control of the KCS stock. If Canadian Pacific was not able to take that control prior to March 25th, 2023, it was required to redeem the bonds at 101. Now, the conditions necessary to that ability to take control are set forth in detail in the defined term STB final approval. So, I'm very focused on which shall become effective. Absolutely, Your Honor. That's the focus of this appeal. Yes, Your Honor. And let me start then with those words because Canadian Pacific concedes on page 30 of its brief that the words shall become effective can mean what we say they mean. They just say they don't mean that when you look at the other context of this agreement. So, I think as a threshold matter, we're on something of common ground that this is how that the words shall become effective can be read as we do to state a future contingency that must be satisfied in order to meet the definition. But what they do and argue to try to get out of that concession or to say it doesn't mean that here flouts numerous canons of interpretation, rules of grammar, and I think betrays the fundamental purpose of this agreement. Let me start with the superfluity problem that I believe respectfully they are unable to solve. The very words in dispute shall become effective do no work, none, under Canadian Pacific's reading. Their reading is that shall become effective means merely that there must be some definitive date in the future whenever at which the decision will become effective. So, here if the decision had said it will be effective in April 2023 or July 2024, it would still be effective on a definite date in the future. But here is another undisputed point. That is utterly unnecessary under the governing rules and regulations. But I understood the response on superfluity is under your reading all of the other factors become superfluous. Because if it has to be a present state of effectiveness, then what could it mean to ask if it's a state or enjoined, exempted, all the conditions have been accepted, et cetera, et cetera. Don't those lose meaning? No, Your Honor. So, first of all, I think Canadian Pacific itself on this appeal did not press the argument that we create superfluity, although I grant that Judge Engelmeyer suggested that below. And respectfully, he was wrong for at least two reasons. So, the phrase that he says we render superfluous is shall not have been state or enjoined. And he says, therefore, shall become effective would be covered by shall not have been state or enjoined. But that's not correct because in order to try to avoid his superfluity problem, he's eliminating or to create a superfluity problem, he is eliminating a possible application. So, suppose, for example, STB issues a decision March 15th and Canadian Pacific has not yet decided whether to accept the conditions, right? They haven't met those other criteria. And then the issue and then the decision is state or enjoined. In that scenario, it is doing separate work, even if it then becomes effective. And I think this is a crucial error in their position. So, under the Judge Engelmeyer, I feel I've lost you, Your Honor. You might get me back.  Which means you've lost me. Under the Judge Engelmeyer's suggestion, you could have everything covered by state or enjoined. But, first of all, he doesn't answer their superfluity problem. He respectfully just ignores it and says, well, that makes sense because that's what the regulations require, which is mandatory effectiveness in 30 days or another date. They specify. But that's not an answer. That is stating the superfluity problem. But let me come back and take one more swing at why we don't have superfluity with an actual effectiveness reading. Decision is issued. Canadian Pacific says, well, we're not yet sure if we want to accept conditions that STB has imposed. And then the decision is stayed through, you know, we all acknowledge it could have been stayed. Someone could get a stay of the decision. And then the effective date happens. So, the decision would have become effective in the sense it would have. And this is, I think, a crucial flaw in their reasoning and perhaps why it's not pressed on appeal. They put so much emphasis on the word become meaning to acquire effectiveness, to come into existence. We actually don't disagree about that meaning of the word become at all. But that's why it's not a superfluity problem for us because it would have become effective. But I do want to just- Why didn't they just use the shall be effective? The district court become does have some suggestion of future. Absolutely, Your Honor. So, why not, if this is what they intended, why wouldn't they have just said in plain language, which is a standard term, shall be effective? So, I think there is a practical reason. And I think it's also not- I think this is another way of saying they could have said it more clearly. So, that second piece first, they could have said shall set a definitive effective date. And they didn't say that either. But let me come back to your hypothetical. Why do we have different tenses? It makes logical sense in the context of an STB decision. So, there are actually three tenses here. There's the present tense, shall be a final order. There is the future looking, shall become effective. And then there's the future perfect, shall not have been stated or enjoined. And that is a normal way to think about it because present tense, the thing's got to come out and it's got to be final. They've got to be done with it. But we know under STB's regulations and their universal practice that effectiveness is logically subsequent to issuance of a final decision, right? The STB separates these things. So, it makes sense to say- and then it has to take effect after issuance. And the STAB provision is in the future perfect because the STAB requirement does work only if it would otherwise have become effective. Why would you require early redemption if there's a decision that there's, I guess, some risk? Why would you- I mean, this is what you're asking for is a requirement of an early redemption. Yes. Right? If there's a decision, of course, there's some risk that it may not work out. But at that point, it's a requirement of an early redemption of notes, which is a big deal. Well, yes, Your Honor. If I may go in a little bit, there are two reasons for that. First, this is what the parties chose. They chose a bright line rule by which this had to be achieved. And so, let me suppose- suppose you had a decision issued March 24th that would be effective in a year. And then now suppose you have a decision issued March 26th that was effective immediately. There's no doubt that the indenture, even under Canadian Pacific's reading, the indenture treats one differently than the other. Right? So the oddity, if you will, of some of the sort of harsh consequences or unusual consequences is a byproduct of- Just go back to Judge Walia's question. The purpose of this is to protect Canadian Pacific. The purpose of this provision is to avoid them getting stuck for decades paying off these notes if the deal does not happen. Isn't that the purpose of the provision? That is one purpose, Your Honor, but there is a second purpose, which is- Wait, before you get to the second purpose. Yes. And isn't that purpose really reflected in the reasonable judgment language giving them the discretion to determine if the conditions have been met or not because they're the ones who are being protected here, correct? No. No, I think I want to say no because I want to modify your premise so heavily. Confident about that. So first, Your Honor, there are two purposes here. But let me take your premise up front. Let's suppose it were just to protect them. It is not the case that they are the only ones- Well, let me back up because I'm really having trouble even ceding that there's one purpose. There are two complementary purposes here, that one side helps us, one side helps them, and no one knows whose ox will be gored unless you know what the interest rates will be. What it ensures to the bondholders is that Canadian Pacific will actually have the legal authority to control the asset that you're lending to help them acquire. So the way this works is you can buy the shares, but until you've got effective STB approval, you have to have that managed separately. That's what this voting trust does. And you cannot, Canadian Pacific, until the STB says it's okay and it has the force of law, you can't control that other railroad. The purpose you're allying there is the voting trust agreement purpose, not this provision. I disagree, Your Honor, but I do want to talk about the voting trust agreement. But the purpose is, the reason that the indenture says you must have the effective order of the STB, is to make sure that there's a window during which Canadian Pacific can actually take control of the asset you're lending. So this is the, I think, absurdity of their position, aside from the textual stuff, which I'm pretty geeked out about, but not everybody finds as entertaining. They would turn this bright line rule into a rule in which the bondholders may never, ever see the benefit of their bargain come into Canadian Pacific. Because it could be stayed a month, a year, six months later, could be reversed on a judicial review. There would never be a moment during which... So there's this reasonableness element that cabins what I think Canadian Pacific can do in connection with the effective date issue. But maybe I've missed this too. I'm trying to understand the logic of this. Yes. In addition to understanding the text of it. So explain that to me. So reasonableness would come into play if there were some factual uncertainty about what STB is going to do and when it's going to do it. So if STB had said, hey, we're not going to rule on your decision on your request by March 25th, then you're going to be, you know, you would have the ability to get rid of it. But, Your Honor, reasonableness does not extend to the meaning of the definition. In fact, one argument that we make, and they never respond to in their brief, is in 3.1, where the reasonable determination language appears, it says, if in their reasonable determination Canadian Pacific determines that STB final approval as defined herein has not been, will not, et cetera, et cetera. So there's absolutely no authority for the idea that this reasonable determination provision has anything to do with the meaning of the term. And so really we never get there because if, as we believe... You understand it to simply be a judgment about whether or not approval will be received in time. Yes. So if STB came back and said, and this is, I think, a good time to mention the Voting Trust Agreement, but if STB came back and said, hey, look, you know, we need an entirely new proposal, we're not going to get to this, or whatever, they don't have to sit around in these bonds and say, you know, we're never going to get there with STB. Doesn't that seem anomalous, though? If that were the scenario, then they could exercise their reasonable judgment as to whether to redeem or not, right? Correct. But if they do get a decision, but it's going to be one day late, on March 26, you're saying they have no such reasonable judgment. Exactly, Your Honor. Doesn't that seem crazy? Not in the slightest. No. So if they got that decision effective immediately, in which there is zero, zero, zero chance that it wouldn't all come to fruition and they could take control the next day, same result, right? So if the decision is issued, suppose you had the decision issued March 26, 2023, it's too late. Even if STB had told them it's coming in a day or a two or three. So that is inherent, and, you know, court after court has said bright lines are bright lines. But let me briefly talk about the voting trust agreement. I'm sorry, Your Honor. Well, I wanted to ask you to geek out on the text a little bit more. Music to my ears. When the effective date comes to fruition, what happens in the world? They are then permitted to dissolve the voting trust. Is anything received? Received by? Like here we issue our opinion and then a mandate issues. No. So in that case, looking at 3.1, in the event Canadian Pacific determines in its reasonable judgment that the final approval has not or will not be received, why doesn't that tell us that what it's referring to in 3.3 is the decision? The FDT approval means a decision that's received as opposed to meeting an effective date to be otherwise received. Because that's in the definition of STB final approval, which shall become effective. I'm sorry. So I want to ask, because I do think received does some work in 3.1. And then as to that point, grammatically, we have two which clauses and then a that clause. Do you see any difference in the use of which versus that in 3.3? No, and I think everybody agrees that all of these are requirements. So interestingly, you know, they don't say that which shall not have been stayed or enjoined means something that doesn't have to be satisfied when the decision is applied. And I do want to I want to let me tie this to the voting trust agreement, because I think this shows exactly why. We know where this text comes from, because it's lifted out of the voting trust agreement verbatim. The definition of STB final approval. Let me start by saying, and I heard a little bit this morning about extrinsic evidence and got kind of excited. This is not extrinsic evidence. In New York, documents that are inextricably linked in the same transaction can be considered together. Let me explain how these exact same words would work under their reading in the voting trust agreement. Under their reading, so it's the same words verbatim. No one disputes that. Under their reading, on March 15th, STB issues a decision, but it's not effective, has no force of law until April 14th. Under their view, they had the power that very moment they accepted the conditions, even though there's no force of law. STB's decision could be stayed, could be enjoined. By its terms, it doesn't have any legal effect. They said that the voting trust, same words over here, would authorize them to take control of the KCS stock. They simply chose not to do so. That is absurd because the voting trust is not something they just threw up into the ether. This was submitted to and approved by the STB itself. So their position requires the implausible conclusion. Well, the highly, the great risk on one side compared to the other. When you say implausible, I don't know that it's implausible. It's just unrealistic. I'll settle for unrealistic, your honor. But I think that, I mean, to how we got here, I think if- Can I just ask you, if we were to determine it was ambiguous, it could mean both things potentially. And we would agree with you that reasonable judgment does not allow them to resolve that ambiguity in their discretion. How would this play out? And how, we would remand it back and how would it be resolved? Well, yes, I think they would have a very difficult evidentiary burden on their hands, which is they would have to put forward some witness who could say, yes, when I wrote the voting trust agreement, and when I, you know, whatever internal correspondence there may be about these words in the voting trust agreement, the supplemental indenture everywhere, I understood subjectively that this didn't need to have the force of law. As long as I had a decision that would someday in the future become effective, even if it never actually became effective. They're going to have to find some way to establish that. And respectfully- When you say the force of law, sir, I'm sorry to go back to this 3.3 language. A decision, and I'm thinking about us, and just Nathan asked a question about mandates. A decision of the United States Court of Appeals which shall become effective. So let's say it becomes effective in 30 days from now, the mandate issues, but it's a decision. Yes, your honor. Let me start by saying we would first point your honor to the examples in our brief of when courts and drafters use the phrase shall become to mean something that has to happen in order to satisfy a definition. But suppose, for example, that your honor issued a decision that says this decision shall become effective in 30 days. But the party that won walked out of there and the very day did whatever your honor had authorized. You, I think, would be pretty upset. That would be because that, by its terms, does not have the force of law. So this is a concept, and this is where I think as a matter of contract, we're talking about custom and usage. Actually, under our rules, the decision does have the force of law. The mandate has something. The effectiveness of the decision is a little bit of a different thing with respect to the district court, but it has the force of law. So I'm trying to understand a decision of the STB, I think just means it has some, it's not without force. Your honor, it does not have legal effect. This is their own, this is their regulation, 49 CFR that's in, I think it's 1113, that says a final decision will not be effective for 30 days unless otherwise specified by the court. And this is for that very reason, to allow parties who might be aggrieved to try to get relief before the. They can get a stay, an injunction, yes, I understand that. Yes. So it's like, your honor, the delay here in the Court of Appeals in issuing a mandate for seven days. So one would not say, suppose, for example, you had ordered the release of a person from custody. But the mandate doesn't issue until the court's rules set. I mean, if he or she were to, you know, release themselves, escape, that would be a violation because that may be the court's view. And the sort of the force, maybe I'm overstating it with force of law, but all we're stating is that there's a final agency determination. The agency has rendered it administratively final. They're done with it. But by their own terms, it doesn't affect. Let me suggest one other anomaly, and then I'll, yes, I appreciate that. Suppose, for example, that the STB decision had said, this decision shall be, instead of saying it'll be effective on April 14th, suppose it had said, this issue, this decision is effective immediately but is stayed until April 14th. Under their reading of the indenture, that is a different result because they would even concede, well, it's been stayed or enjoined. But the actual effectiveness requirement reaches the same result regardless of whether they say it has stayed until April 14th or effective on April 14th. And this is another unusual sort of anomalous consequence. But what would you say about that? Well, I would say that you don't need it because, I mean, it would be effective. It would have become effective because under the STB's nomenclature, effectiveness is a separate thing besides issuance. So it would have checked the actual effectiveness box, and then it would have been stayed or enjoined. But it would have acquired effectiveness but come. But it would have been stayed or enjoined, and so it would have failed the fifth. So it fails the other requirement. Yes, Your Honor. Okay. Thank you for your attention. We reserve three minutes for rebuttal. We'll hear from Mr. Wall. Good morning. Good morning. Judge Lohier, you may please the court. The decision below is right for both of the reasons that Judge Engelmeyer gave. First, the contract set a March 25th deadline for a final board decision which shall become effective, not which shall be effective. That choice of tense was not accidental, as Mr. Stancil recognized. This provision has three different tenses. This use of the future tense tracks the relevant board regulation. As long as Canadian Pacific had a decision in hand that had not been stayed or enjoined and that would become effective, the merger was on track to close, and there was no reason to redeem the notes early. After all, the special mandatory redemption provision was a shield for Canadian Pacific if it could not obtain board approval. It wasn't a sword for note holders if Canadian Pacific could obtain approval. What the note holders bargained for was notes of a merged company, and they got exactly what they bargained for. That is what they hold today. Second, at the least, Canadian Pacific made a reasonable judgment that it had board approval. The parties vested the company with making a discretionary judgment call, so under New York contract law, Wilmington had to show that Canadian Pacific acted arbitrarily, and Wilmington has never alleged or argued that. That alone is a sufficient basis for the judgment. Why isn't it at least ambiguous? You know, putting aside whether the voting trust agreement is extrinsic or not, doesn't that at least suggest that you could have different uses of shall become effective and that, therefore, it's ambiguous? And also they point to, like, the supplement indenture for securities or coupon says shall become mutilated, and they give the example of the lifeguard. So why isn't it at least possible to use shall become something to mean actual effectiveness? So I would say three things, Judge Bianco, and I hope I'll get to loop back to the first and geek out a little bit. The first is, of course, shall become can have different uses, but the shall become as actual effectiveness, the contingency language he's talking about, is a usage that says if A occurs in the future, then B in the future. If you shall become liable for taxes, you shall pay them to the IRS. There is no indication in the language of this contract that it is used in that way. So my first is, on the language, which I hope I can get back to, it's not genuinely ambiguous. Two, I think they have a real problem. They never argued below that it was ambiguous. They come back, and they say we didn't need to, and they cite a case called Chapman. I went and looked at it. It is true that both parties there argued that the agreement was unambiguous their way, and this court sent it back. But there is no discussion of forfeiture there. I don't understand why making an argument that a contract is ambiguous isn't forfeitable and waivable like anything else. So I went digging a little further. There's a footnote in the district court decision about, well, we would need extrinsic evidence on drafters and 10. What is that about? So the footnote is footnote 10, Judge Nathan, and what Judge Inglemeyer says is no party argued that it is ambiguous. They both argued that it's unambiguous. I went looking, and it turns out, as far as I can tell, the circuits have not taken a consistent approach on this. This circuit has an unpublished decision saying it is forfeitable. Three other courts of appeals in the Fourth, Seventh, and the Ninth Circuits have agreed with that in published opinions. There appears to be one decision from the Tenth Circuit suggesting that it may not be forfeitable. I would urge the court not to get into that for my third reason, Judge Bianco, which is if it's ambiguous, we prevail on the backup argument, which is it doesn't just say do you have final board approval by March 25th. That's the way you could write a contract, totally objective, right? It says Canadian Pacific gets to make a reasonable judgment call about that, and the whole point of that language is to say you make the judgment call by March 25th about whether you have it, and then you have to act reasonably, but they've never alleged that the judgment call here wasn't reasonable. All they've said was you can make reasonable judgment calls on the facts, but not on the law. The argument is that when it in parentheses says it's defined herein, that makes clear that the judgment does not apply to interpreting that provision. I don't think so. They have to make a reasonable determination about whether that contractual definition is satisfied, and they want to kind of carve it up and say, well, sure, some of those conditions are factual, so you can make a determination about whether what you have in hand really satisfies the condition because it really says it approves your acquisition, but you can't make a call about the other conditions. I don't understand that. The parties didn't parse it out in that way. Debt instruments like these, nine out of every ten, give somebody a discretionary determination, and the idea is do you make a reasonable judgment call? Did they make a reasonable one? They did. I think they actually made a right one, but in any event, the transaction closed just like the parties had anticipated. The company has been a merged entity for quite some time, and the note holders got exactly what they bargained for. I think your friend on the other side is suggesting that it was irrational, that it was implausible, unrealistic. What's your response to that? So I don't think that's right at all, Judge Lohier, which is to say you say a decision which shall become effective, right? That's not sort of a trigger for some future obligation that arises. It just says by March 25th, do you have a decision that satisfies the following criteria? If you wanted that decision to actually be effective so that they had control, you'd say shall be effective, is effective, an effective decision. You said shall become effective because you knew under the regulation, the parties knew, they were on notice, that the board, the default was 30 days, but the board could say that its decision would become effective further on in the future. So they wrote it to take into account that possibility. That's what happened. They were almost prescient, and then it did take effect on April 14th exactly the way that the board said it would. What do you think here would be an unreasonable judgment with respect to this? Sure. So I think if the board had not issued a decision by March 25th, but it said it was coming any day, and Canadian Pacific said that satisfies, it's clearly not a reasonable determination. You have board approval. If the decision had said we're not going to approve the acquisition, but you can come back to us later in time if you want to, and they said, well, you know, we think that's like good enough, that wouldn't have been a reasonable determination. But here it was clearly a reasonable determination to say we read which shall become effective as having a mandatory and fixed effective date. Going back to the first point, Judge Bianco, we use language like that all the time as lawyers. If I say that by virtue of the Electoral College vote. I agree with you that it can be used that way. My point was that's not the only way that it's used, and they point to the voting trust agreement as an indication, is that if you interpret this language with the exact same wording to mean what you're suggesting it has to mean, it violates, you know, the law. It violates the law. So I don't think that's right for two reasons. The first is I think Judge Engelmeyer is exactly right. It's extrinsic evidence. It's a different contract with a different party. But set that aside. I'll take a look. I'm not focused on that. I'm focused on whether that shows that there's different ways it can be used. So I don't think that's right. It's used exactly the same way in Section 9H Roman at I of that. It's a decision. It's got the same two clauses. One looks backward. Has it been stayed or enjoined? The other looks forward. Do we have a mandatory fixed effective date in the future? It means exactly the same thing in both agreements. They don't have any textual argument based on the VTA different from the supplemental indenture. They come back and say, well, wait a minute. That means under the VTA, once you got the agreement, you could treat that like it was enough, and you could just assume control, and that would be unlawful. Judge Engelmeyer got this exactly right. That's not the only condition. It's necessary, but it's not sufficient. Once you have the decision of the STB, you have to, as the company, send it to the trustee, and you have to separately direct them to hand over control. And there is a federal statute that says it's unlawful to take the control early. So the parties didn't have any reason to try to cover that in some oblique way in the choice of verb tense here because the whole point of the voting trust agreement was to make sure you didn't get the control before you were legally able to have it. So there was no reason to try to cover that. What is the statute? I'll get the site for you, but it says they can't take control until they have final board approval. And so that's the whole point of these voting trust agreements that you set up, where you acquire the stock of the company, but the trustee has to run it until the board signs off on your merger. You said this is exactly what the parties intended, the future effectiveness, but they point out if you do the math, if you do the math from when the published notice was of the initial acceptance of the application by the STB, November 26, 2021, and then you put in a year, and then the 90 days the STB has for final approval, and then there's the 30 days before it becomes effective, that would come out to exactly March 25th. So doesn't that suggest that they were building in actual effectiveness as opposed to some future event? I'm with you on the first half, but not the second. My math is wrong? No, that's the part I'm with you on. I don't have any problem with the courts taking judicial notice of the timelines and saying that's how they got to March 25th because that's true and no one's ever disputed that. I have a problem with the second part when you say, oh, well, that shows that what the parties must have meant was that they'd have an effective decision in hand by March 25th. That's an argument about, that's basically just an effort to smuggle in plural evidence about the party's intent. And the second thing is, Judge Bianco, if that's what they had wanted, there were a number of very natural ways to say it. They said shall become effective because they recognized under the regulation that although March 25th would be the normal time if you stuck to the 30-day default, the regulation says 30 days or on what other date the board declares. And so everybody doing the contract would look at it. I mean, imagine that you're sitting there at the table and you're thinking, well, wait a minute. What if the board doesn't stick to the 30 days? The reg says it doesn't have to. What if we get a decision on March 24th that says it will be effective at some point in the future? There's no stay. There's no injunction. We have reasonable certainty the thing's going to close, and we have the decision in hand from the board, which is self-executing. There's nothing else you get from the board. There's no mandate issuance down the road. What are we going to do in that circumstance? It would make no sense at all to have to redeem early. You would write it to say shall become effective to cover that future possibility. In other words, we fault as courts and lawyers counsel all the time for not writing into contracts precise language that says what they mean. If I were sitting at the table and I were trying to cover a board decision that I got by March 25th that were going to take effect at some point after, I would write shall become effective. I can't think of any other natural locution I would have used as a lawyer to pick up exactly that possibility. Here, sophisticated counsel got it exactly right. And Judge Inglemeyer said shall become effective means has a mandatory and fixed effective date in the future, and that's exactly what this agreement has. And by the way, Judge Bianco, we use language like that all the time. Now, I'll give you one example. Assume that this court issued a decision, like an injunction, and said the injunction would take effect in a couple of weeks in order to give the parties time to seek a stay. And I went up to the Supreme Court, and the relevant rule of the Supreme Court says you can seek a stay if you have an injunction which shall become effective. No one would doubt that I could seek a stay. So, too, Judge Loyer, to your example. If the relevant rule deals with a decision which shall become effective, and I'm really good at writing a cert petition to the Supreme Court, and I do it really quickly before you issue your mandate, again, no one would dispute that I'm rightly there. I have a decision which shall become effective. Judge Bianco, it is, of course, true that shall become can be used in a future contingency sense when you use conditional language or you say if X happens in the future, then Y shall follow. But there is no evidence in this contract that it's used in that way. It is asking a particular question at a particular point in time. Did Canadian Pacific have a decision at hand that checked five boxes, and the fifth of those boxes was which shall become effective? So the only question you are asking is, did you have a decision by March 25th which shall become effective? And what I don't understand is once you say that that first clause, the which shall not have been stayed or enjoined. You're making a correctness argument as opposed to a reasonableness argument here. I have both, Judge Loyer. I think Judge Engelmeyer got it exactly right on the plain meaning of this contract. Can I ask, do you see any significance in 3.1 to the use of received? I do because I do for exactly the reason you gave, Judge Ethan, which is all it's asking is have you received something by March 25th because you do need the decision in hand from the board. And final approval is served? Yes. They're very clear that the decision is final once it is served. So once the decision comes out and the railroad gets it, it's final, and then it takes effect in 30 days or otherwise as the board shall declare. Mr. Stansel is right. They did want a deadline, and the deadline was March 25th, and they may have calculated it the way you said, Judge Bianco, but the deadline was for a decision of the board. Nobody cared if the board decision took effect on that day or 30 days hence or 60 days hence. They already owned the company. They'd already bought the stock, right? What they cared about was having a light at the end of the regulatory tunnel. Can we see that we're going to be able to close this transaction by this March 25th deadline? And if we can see that we're going to get there, there's no reason to redeem the notes early from anybody's perspective. There's no reason for the railroad to lose the financing, and there's no reason for the note holders to be upset. So has it been stayed or blocked? No. Do we have an effective date in the future? Yes. So what happened here? So what happened is exactly what? The interest rates changed. The interest rates changed. Yeah, so the investment, I think, became less favorable to them. If they could pull the money out now at 101, so a slight return, they could take it and put it in the market and get a better rate of return. That's the only thing that happened, right? They get the same return from a merged company from now through 2031 and 2041 that they bargained for. It makes zero sense to blow this up. There is no logic to it at all. Can I ask on the which decision shall not have been stayed or enjoined? In your view, if a decision had been stayed and then vacated, what then? If it had been vacated before March 25th, then you could still reasonably decide you've got the final approval because you'd have no stay or injunction in place and you'd have an effective date. But it doesn't say have a stay or injunction in place. It says which have been stayed or enjoined. It says which shall not have been stayed or enjoined. I think the reasonable reading of that, Judge Nathan, is not if it's stayed for a day and the stay is lifted, you can say, oh, well, that's a historical fact. It was stayed at some point. So, you know, we're not going to move forward with the transaction. The reasonable reading is that hasn't been stayed or enjoined in a way that, like, persists to the present and threatens the transaction. If the district court entered a stay and then immediately said, you know what? Actually, I was wrong. There's no reasonable doubt about this. I mean, I guess it would be a separate question from this case about whether you would just think that you'd had a stay or injunction at some point. But I have to say I don't think that's the most natural reading. I mean, isn't that a natural reading of the tense being used here? I mean, look, I guess if there had been a stay entered and then it had been lifted at some point, I guess they could try to come in and say you couldn't reasonably determine that you had final board approval in the same way that if the decision had become effective and then immediately the board had changed its mind and said actually no effective date, then I guess there'd be a hard question about that. This case doesn't seem to me to present that question because whatever's true by March 25th stays true all the way through time. The only question is does shall become effective allow you to have a fixed mandatory date? And just again, Judge Bianco, that our reading is the normal reading. If you looked up like Black's Law or you went to the grammatical treatises, shall become is future tense for happens in the future, right? There is just this alternative contingent language that you can sometimes use if you have an if then or something like that about the future. And I didn't fight them in the brief. That is a potential use. I think it's like a tertiary use. It's just not the use in this contract. If I say that by virtue of the Electoral College vote, Donald Trump shall become president on inauguration day, I don't mean no fate will befall the president-elect between now and January 20th. I mean that by virtue of the legal rules that govern this situation, he shall become president on the 20th, not the 19th, not the 21st. I'm not guaranteeing some fact about the future. I am saying there is a fixed and mandatory date in the future where something shall take effect. And there's no known defect about related to the decision that you can discern? There's no—no one has ever argued there was any problem with this. The decision took effect on April 14th. The company merged. It has been operating as a merged entity for quite some time, and the note holders have been getting exactly the interest for which they bargained. And you don't make any distinction between the restrictive clauses and non-restrictive clauses? I don't. I don't think the which and the that does a lot of work here. I think what does the work is shall become effective, which are the words you would normally choose if you wanted to cover the situation where it becomes effective in the future. It's a provision that's all about Canadian Pacific, reasonable judgment, sole discretion to decide whether any conditions the board attaches are acceptable. This is an out for the railroad if it can't get regulatory approval, and that reasonable determination language. It's not just objective. It doesn't just say do you have final board approval by March 25th. It says you, the entity that is—this provision is designed to protect, you get an out if you can't reasonably see a light at the end of the tunnel. And I think Judge Inglemeyer got this exactly right. We are right on the plain meaning of the contract, but to the extent it's ambiguous, the right answer is not to implicitly decide about whether this has been preserved or not. I will say I think there's possible circuits put on that. The right answer is to the extent it's ambiguous, as Judge Inglemeyer said, there's a reasonable judgment call here. They've never contested the reasonableness of the judgment. After all, the transaction went through. It closed. They just said, oh, you only get to make a judgment call on some of the conditions and not the other conditions. And there isn't any textual basis for that in the contract. As we'd like to say on the Second Circuit, we've kept you well past your time, Mr. Full. So we'll hear from your friend on the other side. Thank you, Your Honors. Thank you, Your Honor. Let me just start with the superfluity point one more time. Not a word. Their reading of future effectiveness does zero work. It is literally never the case that the court, that the STB, issues a decision with some indefinite future effective date. So this is solving a problem that doesn't exist, hasn't existed in every decision we could find on the electronic database back to 1996, and they're right in the teeth. Your Honor, rather than go back down into my rabbit's nest, I would refer you to pages 45 to 47 of our opening brief, which explains why our reading has no superfluity problem whatsoever. Would you address this? I'm focused on the reasonableness issue. Yes. And your friend has said that you've never contested the reasonableness of Canadian Pacific's judgment. Is that correct? With a giant premise buried in there, Your Honor. The premise being if it means, if either STB final approval means future effectiveness, which we dispute, or if one believes that term is ambiguous, that they have reasonable judgment to interpret that term as a matter of law. We dispute both of those premises. So if we're right about what the word means as a matter of law, which we believe we are, there is no reasonable judgment that this was actually effective prior to March 25th, right? It says April 14th. No one disputes that. What they're really saying is their reasonable determination extends to the meaning of a defined term in the indenture. That is an utterly unsupported proposition of law, and we think is directly contrary to decades and decades that says courts determine what the legal meaning of it is. So your view is that we have to decide the correctness of the interpretation? Yes, or if Your Honors decide that there are two reasonable legal meanings, then there is no textual evidence that they are entitled, for the first time I've ever heard of this, and that they have no authority for, that they get to resolve any ambiguity in their contract with respect to the meaning of the definition. So we would go back for a remand. I mean, you could contract that, couldn't you? They could, but it didn't. And again, as defined herein, I heard no— They say it's not limited, though. You can contract that. They say there's no limitation on the reasonable judgment. The as defined in parentheses doesn't necessarily mean that they can't exercise that judgment with respect to the definition. I respectfully disagree, Your Honor. I don't know why they would have. I mean, it's a defined term. It's in caps. I don't know why the drafters would have said, by the way, this is defined as defined here. You have to make that determination. I think that would be a novel proposition of law, would be to use the overwrought phrase, an elephant in a mouse hole, and certainly would not be something we've ever seen any authority for. You keep pushing it into a law question. I don't press it for it, but having conceded that one could contract to a party using its reasonable judgment in the interpretation of the meaning of a term in the contract, then it's just a question of whether it does that or not. So the absence of cases doesn't seem relevant to that question. Well, I would start—the only evidence on the text of this contract is the words as defined herein, a reaffirmation of the defined term being the guiding term. But moreover, Your Honor, this party's contract against the background law that they have, and so you would expect a very plain statement or one to depart from literally decades and decades or centuries of what does a term mean. But let me then—we don't ever need to get to that because let me raise a few issues not addressed by Mr. Wall's argument. So again, superfluity. He would have to make the argument that somehow this can be read to mean future effectiveness, even though it is conceded that that would do no work. He mentioned the shield and sword problem. That's wrong. It's not an optional redemption right of the company. It is a mandatory redemption right for the company. To the arbitrariness of whether they got what they bargained for, that's just incorrect. There's a bright-line rule here that the parties chose. There's no answer to the unfairness of immediately effective approval on March 26th compared to the delayed effective approval that may never happen. I would like to—there's a premise baked into Mr. Wall's argument that I think is missing here, which is when he says shall become effective, he's now relying exclusively on the simple futurity version of the word shall. But the district court did not even go along with that. The district court said this is the result even if, as we argued, the word shall means must. Must become effective. And this is a crucial problem that fatal to their arguments. If the word shall means must, must acquire effectiveness, his rule does not work because you cannot say that a decision that won't be effective for some period of time during which it might be stayed or reversed, it may never come into effect. You cannot say— What is the word—I just want to go back. What does the word reasonable judgment do there? So if my reasonable judgment is that it must become effective at some point, some date certain, then what? Well, you can't make a—you cannot make a reasonable determination that something that may or may not become effective must become effective. There are going to be contexts in which there is no reasonable judgment to make that would change the term. So, for example, they couldn't make a reasonable determination that the STB in fact approved it if the STB in fact rejected it. There's no room for reasonableness. So that doesn't take away the room for reasonable discretion. It just means that when it comes to that particular question, there's only one determination that would be reasonable. But if shall means must and the district court thought that it did, then they have to lose because must—there's no way to say that it must become effective. The waiver point I just want to briefly address. There was—if there's a waiver of waiver argument, Mr. Wall did not throw out any of those supposed cases on a circuit split, but you don't need to get to it. I would refer your honor to Joint Appendix 772, which is the motion to dismiss argument where Judge Inglemeyer actually asked the question whether we also think it would be reasonable if we think we are right. And here's my exact words. I tell them why I'm right, and then I say, but at the very least, it is not unreasonable. So we would have to move on and have discovery. So if you have to remind a court that saying something means X is a matter of law, preserves your right to argue that it's reasonable as a matter of law, we did that. The— I'll give you one more minute. Thank you, your honor. I think I actually can do it in a minute. On the if-then, A-then-B argument about how shall-become has to have those magic words, that's wrong. If you look at pages 8 to 10 of our reply brief, we give examples from statutes, like the forfeiture statute and the seizure statute, where Congress does not say if and then. Rather, when you introduce it with a relative clause, and here it's a definition, that is an accepted usage of shall-become to state a future contingency. So you don't need to say STB final approval means X, Y, and Z, and then also say, and if X, Y, and Z are present, STB final approval will be satisfied. That's essentially what their position reduces to. There's a federal statutory overlay on this that Mr. Wall referenced that is somewhat protected. Can you address that? There's a federal statutory overlay that Mr. Wall— Oh, yes, your honor. It's literally the very last point I want to make, because it's incorrect. I mean, it is true that the federal statute forbids you from taking control of a railroad, but that actually is fatal to him, because if that were the case, the voting trust wouldn't also need to say it's final, wouldn't need to say that it hasn't been stayed or enjoined, because their view of the voting trust is it doesn't matter if shall-become effective doesn't have actual effect, because there are separate things in the law that prevent us from breaking the law. But then why does it say it shall not have been stayed or enjoined? Why wouldn't the drafters have said, oh, yeah, as long as you have a decision, even if it's been stayed or enjoined, we know you won't violate the law. So his argument proves too much, and I think when we take a step back, the language came from a document. We know where it came from. We know exactly what it means, and we know that it is not— respectfully, we submit it is not reasonable, but at the very least, it is debatable whether those words authorize them to violate the law. Thank you very much. We've kept you well past your time, very well argued. We'll reserve the decision.